James GREEN, Plaintiff,

v.

MONTGOMERY WARD & COMPANY, INC., Defendant & Third–Party Plaintiff/Appellant,

v.

MAGNA AMERICAN CORPORATION, Third–Party Defendant/Respondent.

No. WD 41405.

Missouri Court of Appeals, Western District.

June 6, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 1989.

Application to Transfer Denied Sept. 12, 1989.

---

Patrick Lysaught, Kansas City, for defendant & third-party plaintiff/appellant.

Jeffrey Cramer, St. Louis, for third-party defendant/respondent.

Before BERREY, P.J., and MANFORD and NUGENT, JJ.

BERREY, Judge.

Appeal from an order of the trial court dismissing appellant Montgomery Ward & Company, Inc.'s (Montgomery Ward) third-party petition against respondent, Magna American Corporation (Magna).

The present appeal had its genesis in a product's liability action instituted by James Green against Montgomery Ward. Green alleged that he suffered bodily injury while operating a Shopsmith Mark V multipurpose wood saw on or about April 30, 1983. Green had purchased the saw from Montgomery Ward sometime between the years 1959 and 1961. The saw was manufactured and designed by Yuba Power Products, Inc. (Yuba), the predecessor corporation to Magna American Corporation, an Ohio corporation which in turn was a predecessor corporation to respondent Magna, a Mississippi corporation.

Green originally filed suit in the Circuit Court of the City of St. Louis against both Montgomery Ward and Magna. Both entities filed motions to dismiss. Montgomery Ward's motions to dismiss were predicated upon the grounds of forum non-conveniens and lack of venue. Magna's petition was grounded upon a lack of personal jurisdiction and a lack of venue. The St. Louis court's order dismissing Montgomery Ward and Magna read in full, "Defendants' motion to dismiss on grounds of lack of jurisdiction and lack of venue sustained."

Following the dismissal by the St. Louis court, Green subsequently refiled his action in the Circuit Court of Cole County. This time the action was filed only against Montgomery Ward. Magna was not joined. Montgomery Ward filed a third party petition against Magna. In Montgomery Ward's proposed amended petition it was alleged that "Magna, either directly or through a predecessor corporation or subsidiary, designed, manufactured, assembled and/or placed into the stream of commerce, the saw referred to in plaintiff's Petition." The initial third-party petition did not allege that Yuba had any minimum contacts with Missouri. Magna, not surprisingly, by special appearance, filed a motion to dismiss on the grounds of lack of jurisdiction. The motion to dismiss alleged that Magna does not and did not have the minimum contacts necessary for the court to acquire personal jurisdiction. Montgom-

ery Ward, however, claimed that jurisdiction was proper as to Magna based upon the acts of Yuba, its predecessor. Montgomery Ward then offered a very interesting document for the court's perusal. Montgomery Ward offered a pleading titled, "Defendant's Confession of Motion re Status as 'Successor Corporation'" filed by Magna in the District Court for the County of Denver, Colorado, in a lawsuit styled as *Gary W. Patterson v. Magna American Corporation, A Mississippi Corporation,* Case No. 84–CV–4552. In that confession Magna admitted its status as a successor corporation to Yuba. In the confession Magna, the Mississippi corporation, respondent in the instant action, admitted that "In 1961, Yuba ... changed its name to Magna American Corp., and shortly thereafter to Magna American, an Ohio corporation." Furthermore, "In 1966 Magna American Corporation, an Ohio Corporation, transferred substantially all of its assets to Magna American Corporation, a Mississippi corporation.... Thereafter, the Ohio corporation dissolved." After this transaction in 1966, the Mississippi Magna continued the business of the Ohio Magna.

Magna also admitted, in response to interrogatories filed in the St. Louis action, that it had owned the "Shopsmith" trademark and that "Magna America (sic) Corporation assembled a limited quantity of Shopsmith Saws from parts acquired in the move of the corporation from Ohio to Mississippi." However, in that same action in the St. Louis court, in response to the query, "State whether or not Magna Corporation is the successor of Yuba Power Products, Inc.," Magna's answer was "No."

Magna was dismissed as a third party on September 19, 1988. The judge below stated, "Upon consideration of the certified copy of the city of St. Louis' Court's order and affidavit of the president of Magna American, Magna American's Motion to Dismiss for lack of personal jurisdiction is sustained." This also rendered Montgomery Ward's motion to file an amended third-party petition moot. This appeal followed.

Appellant contends that the trial court erred in dismissing the third party petition because: (1) the St. Louis court order does not preclude a finding of personal jurisdiction; and (2) Magna, as successor to Yuba is subject to the in personam jurisdiction of the Missouri courts as Yuba had sufficient contacts to satisfy Missouri's Long–Arm Statute. Appellant also requests that in the event that this court is not satisfied as to whether Yuba had sufficient contacts to satisfy the Long–Arm statute, the cause be remanded for further discovery.

■ The first issue which must be addressed is that of collateral estoppel. Respondent contends that the ruling of the St. Louis circuit court works to preclude a finding of in personam jurisdiction over Magna as this precise issue was decided by that court. A finding of collateral estoppel or "issue preclusion" requires that the elements outlined in *Oates v. Safeco Ins. Co. of America,* 583 S.W.2d 713 (Mo. banc 1979), be met. The elements which the court should consider are; (1) whether the issue to be decided is *identical* with the issue decided in the prior litigation; (2) whether the prior litigation resulted in a judgment being rendered on the merits; (3) whether the party against whom the assertion of collateral estoppel is being made was a party to the prior litigation; and (4) whether the party against whom collateral estoppel is being asserted had a full and fair opportunity to litigate on the issues in the prior suit. *Id.* at 719; *See also Hudson v. Carr,* 668 S.W.2d 68, 70 (Mo. banc 1984).

■ Collateral estoppel only pertains to those issues which were "necessarily and unambiguously decided." *Burton v. State,* 726 S.W.2d 497, 499 (Mo.App.1987). The doctrine does not apply to a general judgment which does not clearly reflect exactly what issues were decided. *Id.*

■ Turning then to the case at hand and applying these rules, it is evident that collateral estoppel has not been established and the ruling of the St. Louis circuit court is not controlling. Montgomery Ward was not accorded a "full and fair" opportunity to litigate, nor was the issue resolved in an unambiguous fashion by the St. Louis

court and no judgment was rendered on the merits of the case.

Montgomery Ward, as co-defendant in the initial action, did not have a full and fair opportunity to litigate. Respondent claims that in the initial action Montgomery Ward was allied with plaintiff James Green and that Montgomery Ward should have contemplated a third-party action or cross-claim at some later date. In the initial action both Montgomery Ward and Magna sought to dismiss Green's petition. Montgomery Ward had no reason to oppose Magna's motion to dismiss. Montgomery Ward's position was one of co-defendant and no logical reading of the facts shows it to be allied with Green. It would have been unusual for Montgomery Ward to challenge Magna's status at this point as they too sought dismissal.

The judge's order is not clear. Several interpretations can be given to the words "Defendants' motion to dismiss on grounds of lack of jurisdiction and lack of venue sustained." Under the facts presented here it is impossible to determine what the court was making reference to in its order. Magna's interpretation, that dismissal on the grounds of lack of jurisdiction applied only to Magna is misleading and ignores Montgomery Ward's assertion as to jurisdiction and the lack thereof in both its initial "Motion to Dismiss" and its later "Motion to Dismiss or Transfer" which specifically states, "This court lacks jurisdiction over the subject matter." Accordingly, collateral estoppel presents no bar in the instant case.

As the doctrine of collateral estoppel is inapplicable the question of Magna's status must be addressed. This question can be broken down into two parts: (1) whether Magna is indeed the successor corporation to Yuba; and (2) whether Yuba had sufficient contacts with Missouri to justify long-arm jurisdiction. Respondent relies on *Young v. Fulton Ironworks Company,* 709 S.W.2d 927 (Mo.App.1986), as standing for the proposition that where one corporation sells or otherwise transfers its assets to another corporation, the latter is not held to be liable for the debts and liabilities of the transferor. *Id.* at 939. Respondent claims that this describes its position regarding its relationship with Yuba. A distinction between an arms length transaction for the sale of assets and a "mere continuation" of a company needs to be made.

In 1961 Yuba became Magna American Corporation, an Ohio corporation. In 1966 the Ohio entity transferred substantially all of its assets to Magna American Corporation, a Mississippi corporation. The Colorado "Confession of Motion Re Status as 'Successor Corporation'" contains the following:

4. In 1966, Magna American Corporation, an Ohio corporation, transferred substantially all of its assets to Magna American Corporation, a Mississippi corporation.

5. Thereafter, the Ohio corporation dissolved.

6. After the 1966 transaction, the named defendant, Magna American Corporation, a Mississippi corporation, *continued the business* of the Ohio corporation of the same name.

(Emphasis added.)

The court in *Young* relied on *Tucker v. Paxson Machine Co.,* 645 F.2d 620 (8th Cir.1981), in examining the substantive law of Missouri on the issue of when the liabilities of the transferor are assumed by a corporate transferee. *Tucker* lists four instances in which the debts and liabilities of the transferor are to be held against the transferee: (1) where a purchaser agrees, either expressly or impliedly, to assume such debts; (2) where the transaction is a consolidation or merger; (3) where the purchasing corporation is simply a mere continuation of the seller; and (4) where the transaction was entered into to escape liability for such debts on a fraudulent basis. *Tucker v. Paxon Machine Co., supra,* 645 F.2d at 622.[1]

 It is the "mere continuation" exception that applies in the instant case. Here

1. *See also United States v. Bliss,* 108 F.R.D. 127 (D.C.Mo.1985); *Duris v. Erato Shipping Inc.,* 684 F.2d 352 (6th Cir.1982); *Goffe v. Blake,* 605 F.Supp. 1151 (D.C.Del.1985); *Cole v. Caterpillar Machinery Corp.,* 562 F.Supp. 179 (D.C.La.1983),

the close alignment of Magna to the predecessor is enough to bind Magna to its predecessor's jurisdictional contacts. Magna itself, in answer to interrogatories in the St. Louis action, admitted that it, "assembled a limited quantity of Shopsmith Saws from parts acquired *in the move of the corporation from Ohio to Mississippi.*" (Emphasis added).

■ As a "mere continuation" of Yuba, Magna is subject to the personal jurisdiction of the Missouri courts if Yuba had contacts with the state sufficient to allow this exercise of personal jurisdiction. The rationale for this is quite simple. It would be all too easy for a corporation to immunize itself from liability by utilizing such a device as a change of name.

The question thus becomes one of whether the contacts Yuba had with Missouri are sufficient to establish long-arm jurisdiction as contemplated by section 506.500, RSMo 1986, which reads in part:

**506.500. Actions in which outstate service is authorized—jurisdiction of Missouri courts applicable, when.**—1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:

(1) The transaction of any business within this state;

(2) The making of any contract within this state;

(3) The commission of a tortious act within this state;

(4) The ownership, use, or possession of any real estate situated in this state;

(5) The contracting to insure any person, property or risk located within this state at the time of contracting;

(6) Engaging in an act of sexual intercourse within this state with the mother of a child on or near the probable period of conception of that child.

Satisfaction of the minimum contacts requirement is part one of the two-step test for further examination of the "mere continua-

traditionally used as a guide in this area of law. It must also be "fair and reasonable" to require a defendant to litigate in the forum state. *See International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

The record before this court is not adequate for the purposes of establishing whether Yuba had the requisite minimum contacts. It is clear that the issue was not fully developed in the proceeding below as Montgomery Ward's request to conduct discovery was rejected by the trial court when Magna's motion to dismiss was sustained. As Montgomery Ward has not been afforded the opportunity to develop the issue of Yuba's contacts a remand is necessary for discovery upon this issue. *See State ex rel. Deere & Company v. Pinnell,* 454 S.W.2d 889 (Mo. banc 1970).

Accordingly, the order of the trial court dismissing Magna is reversed and the cause remanded with instructions that Montgomery Ward be allowed an opportunity for discovery.

All concur.

tion" issue in various jurisdictions.