**CHEMICAL DESIGN, INC., Appellant,**

v.

**AMERICAN STANDARD, INC., & Cust-O–Fab, Inc., Respondents.**

**No. 61544.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 9, 1993.

Joan M. Tanner, St. Louis, for appellant.

Jon Moyers, Kenneth Heineman, Brenda Baum, Jonathan Andres, Bruce Ryder, St. Louis, for respondents.

CARL R. GAERTNER, Presiding Judge.

Plaintiff, Chemical Design, Inc., appeals from the entry of summary judgment in favor of defendant American Standard, Inc., and Cust–O–Fab, Inc., in plaintiff's action seeking contribution or indemnity for the settlement of a suit for personal injury filed against plaintiff by one Victor Rodriguez. We affirm.

The facts material to the granting of summary judgment are not in dispute. In 1974, American Standard designed and manufactured a gas condenser for plaintiff which plaintiff incorporated into a hydrogen recovery system installed at a Monsanto Chemical Company plant. American Standard furnished plaintiff with plans and specifications for the gas condenser. In 1979, Monsanto requested that Cust–O–Fab manufacture a replacement gas condenser according to the 1974 American Standard plans. In 1981, this gas condenser exploded causing injuries to Victor Rodriguez, a Monsanto employee. Rodriguez sued plaintiff in the United States District Court for the Eastern District of Missouri. The litigation was settled upon plaintiff's payment of $1,350,000 to Rodriguez. Plaintiff then instituted this action seeking indemnity or contribution from American Standard and from Cust–O–Fab.

American Standard moved for summary judgment on the grounds that it had no relationship to the gas condenser installed in 1979 which allegedly caused the injury and that it owed no duty to anyone insofar as that gas condenser was concerned. The trial court granted that motion on January 22, 1992.

Cust–O–Fab moved for summary judgment on the grounds that the alleged defective gas compressor was manufactured by a predecessor corporation. Affidavits, de-

positions, and documents filed in support of and opposition to this motion disclose that defendant Cust–O–Fab is the second Oklahoma corporation to bear that name. The first, referred to here as Cust–O–Fab I, was incorporated February 23, 1973, and engaged in the business of manufacture and sale of heat exchangers such as the gas compressor manufactured and sold to Monsanto in 1979. In December, 1986, the shareholders and directors of Cust–O–Fab I ceased doing business and sold the assets of the corporation to Cust–O–Fab II, an Oklahoma corporation incorporated January 2, 1987 by two former employees of Cust–O–Fab I. The new corporation immediately notified the customers and employees of Cust–O–Fab I of the change in ownership, opened new bank accounts, obtained a new Federal Employer Identification Number, made changes in employee benefits and profit sharing plans, but otherwise continued the business of Cust–O–Fab I at the same location. The officers of Cust–O–Fab I entered into an agreement with Cust–O–Fab II to serve as consultants and advisors for a period of ten years. Additionally, Cust–O–Fab I, its directors and shareholders, agreed to hold Cust–O–Fab II harmless from any liabilities including liability arising from the manufacture and sale of products. The two corporations did not have any common shareholders, directors, or officers at any time.

None of these facts are contested. Rather the dispute in this case concerns differing opinions regarding the legal effect of these facts upon the respective rights of the parties. Accordingly, summary judgment is appropriate. *Roberts Fertilizer, Inc. v. Steinmeier*, 748 S.W.3d 883, 887 (Mo.App.1988).

## I.

### American Standard

■■■ The basis for the trial court's granting of American Standard's motion was the absence of any duty owed by that defendant to plaintiff or to Victor Rodriguez arising from the manufacture of the gas condenser which caused the injury. The elements of actionable negligence are the existence of a duty, a breach of that duty, and injury resulting from that breach. *Scheibel v. Hillis*, 531 S.W.2d 285, 288 (Mo. banc 1976); *Rogger v. Voyles*, 797 S.W.2d 844, 846 (Mo.App.1990). A defendant's duty is measured by the scope of foreseeable, unreasonable risks. *Heacox v. Robbin's Educational Tours*, 829 S.W.2d 600, 602 (Mo.App.1992). Foreseeability is established when a defendant is shown to have actual or constructive knowledge that there is some probability of injury such that an ordinary person would take precautions to avoid it. *Pierce v. Platte–City Electric Co-op.*, 769 S.W.2d 769, 776 (Mo. banc 1989). "No duty is owed to persons outside 'the orbit of the danger as disclosed to the eye of reasonable vigilance.'" *Krause v. U.S. Truck Co., Inc.*, 787 S.W.2d 708, 710 (Mo. banc 1990) (quoting from *Palsgraf v. Long Island Railroad Co.*, 248 N.Y. 339, 162 N.E. 99, 100, 59 A.L.R. 1253 (1928)).

In 1974, American Standard designed and manufactured a gas condenser for plaintiff which was installed at a Monsanto plant. The plans and specifications for this gas condenser were furnished to plaintiff at that time with the following caveat inscribed upon the face of the drawing:

THIS DOCUMENT CONTAINS MATERIAL AND/OR INFORMATION WHICH IS THE PROPERTY OF AMERICAN STANDARD, INC., (A DELAWARE CORPORATION) AND SUPPLIED ONLY ON CONFIDENTIAL BASIS, NO TRANSMITTAL OR DISCLOSURE SHALL BE MADE TO ANY PERSON, FIRM OR CORPORATION, WITHOUT PRIOR WRITTEN APPROVAL OF AMERICAN STANDARD, INC.

American Standard had neither actual or constructive knowledge that its directive would be violated and that plaintiff or Monsanto would misappropriate its plans and specifications. The duty owed by American Standard to persons who might come in contact with the gas compressor it manufactured could not be extended to others by reason of this misappropriation of its design. "[E]ssential to liability for negligence is a relationship the law recognizes

as the basis of a duty of care between the inflictor of the injury and the person injured." *Hoover's Dairy, Inc. v. Mid–American Dairymen,* 700 S.W.2d 426, 432 (Mo. banc 1985) (quoting from *Hyde v. City of Columbia,* 637 S.W.2d 251, 257 (Mo.App. 1982), *cert.* denied *Tribune Publishing Co. v. Hyde,* 459 U.S. 1226, 103 S.Ct. 1233, 75 L.Ed.2d 467 (1983)). Such a relationship exists between the designer and manufacturer of a product and persons who foreseeably will use that product. Thus, by operation of law American Standard undertook to assume exposure to liability for injury caused by use of the gas compressor it designed and manufactured. But no relationship upon which to base a duty exists between American Standard and persons injured by the use of a different product copied by a third party from American Standard's plans and specifications.

Therefore, the disputed issue regarding any possible defect in American Standard's design is not material to the rendition of summary judgment in this case. That its plans and specifications would be misused by others in violation of its printed directive could not be reasonably foreseeable by American Standard. Nor is there any relationship between American Standard and Victor Rodriguez through which a duty may be found to flow. As stated in the Restatement (2d) of Torts, § 281 Comment (c) "if the actor's conduct creates a recognizable risk of harm only to a particular class of persons, the fact that it in fact causes harm to a person of a different class, to whom the actor could not reasonably have anticipated injury, does not make the actor liable to the persons so injured." Plaintiff's first point on appeal is denied.

## II.

### Cust–O–Fab

■ Plaintiff's second point on appeal is that the trial court erred in granting summary judgment to defendant Cust–O–Fab II. Plaintiff claims there is an issue of material fact as to whether or not Cust–O–Fab II is a mere continuation of Cust–O–Fab I which gives rise to successor liability.

■ The general rule in Missouri is that when all of the assets of a corporation are sold or transferred the transferee is not liable for the transferor's debts and liabilities. *Young v. Fulton Iron Works Co.,* 709 S.W.2d 927, 938 (Mo.App.1986). The rule is subject to four exceptions: 1) when the purchaser expressly or impliedly agrees to assume the debts and liabilities; 2) when the transaction amounts to a consolidation or merger of the corporation; 3) when the purchasing corporation is merely a continuation of the selling corporation; 4) when the transaction is entered into fraudulently in order to escape liability for the debts and liabilities. *Id.* at 938; *Brockmann v. O'Neill,* 565 S.W.2d 796, 798 (Mo.App. 1978). The only exception issue here is whether Cust–O–Fab II is a mere continuation of Cust–O–Fab I.

In addressing issues of successor corporation liability for the acts and omissions of a predecessor corporation, different courts have reached different definitions of the phrase "continuation of the selling corporation." One line of authority views the phrase as describing the continuation of the product line of the selling corporation.

> "[W]here one corporation acquires all or substantially all of the manufacturing assets of another corporation, even if exclusively for cash, and undertakes essentially the same manufacturing operation of the selling corporation, the purchasing corporation is strictly liable for injuries caused by defects in units of the same line, even if previously manufactured and distributed by the selling corporation or its predecessor." *Ramirez v. Amsted Industries, Inc.,* 86 N.J. 332, 431 A.2d 811, 824–25 (1981).

The "product line" theory has been adopted in other jurisdictions as well. *See Ray v. Alad Corporation,* 19 Cal.3d 22, 136 Cal.Rptr. 574, 582, 560 P.2d 3, 11 (Cal. Supp.1977); *Dawejko v. Jorgensen Steel Company,* 290 Pa.Super. 15, 434 A.2d 106, 110 (1981); *Martin v. Abbott Laboratories,* 102 Wash.2d 581, 689 P.2d 368, 388 (1984).

A related approach to the question of the meaning of "continuation of the selling corporation" may be termed "continuity of the

enterprise." These cases hold that the purchaser of assets who continues to manufacture and sell the product of the seller and who takes advantage of the trade name and good will of the seller is estopped from claiming it has not also succeeded to the liabilities of the seller.

"Where the successor corporation represents itself either affirmatively or, by omitting to do otherwise, as in effect a continuation of the original manufacturing enterprise, a strong indication of continuity is established. Justice would be offended if a corporation which holds itself out as a particular company for the purpose of sales, would not be estopped from denying that it is that company for the purpose of determining products liability. This was recognized in another context in the Restatement Torts, 2d, § 400 which decrees 'one who puts out as his own product a chattel manufactured by another is subject to liability as though he were its manufacturer.' " *Turner v. Bituminous Casualty Co.*, 397 Mich. 406, 244 N.W.2d 873, 883, 884 (1976).

New York and Alabama have adopted the "continuity of enterprise" theory. *See Salvati v. Blax–Knox Food and Chemical*, 130 Misc.2d 626, 497 N.Y.S.2d 242, 247 (Sup.1985) and *John E. Smith's Son's Co.*, 369 So.2d 781 (Ala.1979). Illinois appears to have at least partly accepted this theory as well. *Hernandez v. Johnson Press Corporation*, 70 Ill.App.3d 664, 26 Ill.Dec. 777, 781, 388 N.E.2d 778, 782 (1979) and *Gonzalez v. Rock Wool Engineering and Equip.*, 117 Ill.App.3d 435, 72 Ill.Dec. 917, 920, 921, 453 N.E.2d 792, 795, 796 (1983).

Both the "product line" and the "continuity of enterprise" theories of successor liability may be viewed as logical extensions of the rationale underlying the change in products liability cases from the traditional concepts of the law of sales to the relatively recent development of strict liability in tort. This rationale was expressed by the Supreme Court of Missouri in *Katz v. Slade*, 460 S.W.2d 608, 611 (Mo.1970) in the following terms:

"In determining this question we look to the basic policy reasons underlying the decisions in this State abrogating the requirement of privity of contract in implied warranty cases and imposing strict liability in tort in cases in which that element is absent. Various reasons have been assigned: to reshape the law to conform to the requirements of modern life in the interest of social justice; to modify the harsh results flowing from the rule of caveat emptor; to afford justice to the majority of the consumer citizenry whose well-being, health and lives are dependent in great degree upon processed food and manufactured articles, the fitness or safety of which the ordinary consumer knows little other than that the processor or manufacturer holds them out to the public as fit and safe for use; that by so placing their products on the market under modern conditions of retail merchandising, with the use of widespread advertising, manufacturers and suppliers are encouraging purchase of their products and representing to the consuming public that their products are suitable and safe for use; that the burden of losses consequent upon the use of defective articles should be borne by those who can control the danger or make equitable distribution of the losses; that such losses should be borne by manufacturers and sellers marketing the products of industry rather than by injured persons powerless to protect themselves."

It can be argued that because such public policy and social philosophy have been seen as requiring a departure from the harsh concept of "caveat emptor" and the narrow confines of privity of contract in determining the liability of manufacturers, so to should the intricacies involved in the form of corporate succession fall beneath the weight of the same policy and philosophy. However, courts in Missouri have not seen fit to depart from the traditional distinction between corporate mergers or the sale and purchase of outstanding stock of a corporation, whereby preexisting corporate liabilities also pass to the surviving corporation or to the purchaser, and the sale and

purchase of corporate assets which eliminates successor liability. In *Young v. Fulton Iron Works Co.*, 709 S.W.2d 927 (Mo. App.1986) our colleagues from the Southern District examined a number of cases from other jurisdictions which broadened the scope of successor liability. Nevertheless, our colleagues concluded that Article V, § 2 of the Missouri Constitution required adherence to the last controlling decision of the Missouri Supreme Court on the issue as set forth in *Ingram v. Prairie Block Coal Co.*, 319 Mo. 644, 5 S.W.2d 413 (1928). Accordingly, the court in *Young* rejected the "product line" theory of successor liability and also concluded that in the absence of common incorporators, directors, officers, or shareholders between the selling and purchasing corporations, the latter could not be held to be a "mere continuation" of the former. *Id.* at 940–941. *See* also, *Tucker v. Paxson Machine Co.*, 645 F.2d 620 (8th Cir.1981). In other words, Missouri continues to adhere to the concept that the phrase "continuation of the corporation" should be literally applied to the continuation of the corporate organization, management, and operations, rather than merely the continuation of the enterprise or the product line. This is clear even from the cases relied upon by plaintiff herein. The recent holding in *Harashe v. W.R. Grace Co.—Conn.*, 848 S.W.2d 506, 508–09 (Mo.App.E.D.1993) which found corporate successor liability illustrates this point. The successor corporation in *Harashe* purchased the predecessor corporation's assets by issuing stock to the predecessor's shareholders thus making them shareholders of the successor corporation. The president of the predecessor corporation was retained by the successor for a five-year period and the Agreement between the two corporations specifically provided that the successor would assume the liabilities, including the contingent liabilities, of the predecessor.

In *Young* the court concluded the purchase of assets and the continuation to manufacture certain products was not a continuation of the selling corporation. Particular note was taken of the fact that there were no common officers, directors, or shareholders between the buyer and the seller. 709 S.W.2d at 941. In *Green v. Montgomery Ward & Co., Inc.*, 775 S.W.2d 162 (Mo.App.1989), the court found the entry of summary judgment before completion of discovery premature where the defendant itself referred to the purchase of assets from an Ohio corporation by a similarly named Mississippi corporation as "the move of the corporation from Ohio to Mississippi." *Id.* at 166.

In the instant case, Cust–O–Fab II, although continuing to manufacture some of the products of Cust–O–Fab I, took major steps to dispel the notion that it was merely a continuation of the selling corporation. It notified its customers and employees of the new management, altered its employee benefit package, obtained a new Federal Identification Number. It expanded its product line and sales territory. Although there is a dispute about the extent of the involvement of prior officers of Cust–O–Fab I as consultants to Cust–O–Fab II, the evidence viewed most favorably to plaintiff does not rise to the level of showing involvement in management. Rather, they rendered advice on two or three occasions over a five year period, but were never involved in management decisions. There was a clear line of demarcation separating the corporate structure, organization, and management of Cust–O–Fab I from that of Cust–O–Fab II.

Accordingly, the judgment of the trial court is in all respects affirmed.

CRANE and SIMON, JJ., concur.