Manuel BARAJAS, et al., Appellants,

v.

FIRESTONE STEEL PRODUCTS COMPANY, formerly a Division of the Firestone Tire & Rubber Company, et al., Appellees.

No. 13–93–071–CV.

Court of Appeals of Texas, Corpus Christi.

Feb. 2, 1995.

Rehearing Overruled March 9, 1995.

William R. Edwards, III, Edwards, Terry, Baiamonte & Edwards, William R. Edwards, Edwards & Terry, Corpus Christi, for appellants.

Patrick Zummo, Maria Wyckoff Boyce, T. Christopher Trent, James E. Maloney, Matthew P. Eastus, Baker & Botts, Houston, William E. Corcoran, Kurt Stephen, Cardenas & Whitis, McAllen, for appellees.

Before GILBERTO HINOJOSA,[1] FEDERICO G. HINOJOSA, Jr., and YAÑEZ, JJ.

**OPINION**

YAÑEZ, Justice.

This products liability case involves an alleged 16.5–inch diameter wheel, or a component part thereof. Manuel and Luisa Barajas sued Firestone Steel Products Company, Accuride Corporation, The Firestone Tire & Rubber Company, and Bridgestone/Firestone, Inc. (collectively Firestone), for negligence, strict products liability, and civil conspiracy after their son, Jimmy Barajas, died while allegedly mounting a 16–inch diameter tire onto a 16.5–inch diameter wheel. The trial court granted summary judgment favorable to Firestone on all the Barajases' claims

[1.] Former Justice Gilberto Hinojosa not participating.

and ordered that the Barajases take nothing by their claims against Firestone. The Barajases raise four points of error. We reverse and remand.

In November 1989, sheriff's deputies found 31–year–old Jimmy Barajas lying on his back in or near a work shed. He had injuries to his face and head. Their reports showed that he was changing a tire in the shed when the tire exploded, striking him in the upper body. Photos show a tire, with a gash in its sidewall, mounted on a wheel. The medical examiner's report revealed that Jimmy had died as a result of blunt-impact injuries sustained when a tire exploded which he was inflating. The tire and wheel allegedly involved are missing; however, the parties do not dispute that when this incident occurred, Jimmy was trying to inflate a 16–inch diameter tire on a 16.5–inch diameter wheel.

Jimmy's parents, Manuel and Luisa Barajas, sued Firestone alleging, in relevant part, as follows: Firestone had designed, manufactured, and sold the wheel/rim in question, or a component part thereof. It was in the business of designing, manufacturing, and selling wheel/rims like the one in question. It had originally designed, patented, licensed, and marketed a tire-and-rim combination using a 15–degree bead seat taper. It caused this taper design to become a standard in the tire-and-wheel industry, and the wheel/rim in question had this taper design. It had originally designed, introduced to the tire, wheel, and vehicle industries, initiated, promoted, and marketed the 16.5–inch wheel/rim design like the one in question. This design, introduction, and marketing was defective, unreasonably dangerous, and a producing cause of Jimmy's death.

Firestone moved for summary judgment on the grounds that it did not design, manufacture, or sell the product upon which the Barajases based their claims or liability. It further contended that no material fact issue existed and that it was entitled to judgment

as a matter of law. Its summary judgment evidence consisted of James Gardner's deposition. Gardner had worked as Firestone's Manager of Product Analysis. It had designated him as its corporate representative to speak whether it had manufactured the wheel[2] in question. He stated that the wheel was probably 16.5 inches in diameter and probably a 6.0 or a 6.75 width. His testimony showed that from roughly 1978 to the early 1980's, Firestone had manufactured single-wheel application, 16.5–inch diameter wheels. His testimony further showed that Firestone had not manufactured the wheel in question and that Kelsey–Hayes Company had manufactured 16.5–inch wheels designed consistent with the wheel in question. The Barajases' counsel asked him if he knew whether Firestone had ever sold *any* component parts; *i.e.*, this type of rim or this type of disc without selling it as an assembled wheel. He responded that he was "not aware of that in this particular size."

The Barajases filed a response to Firestone's summary judgment motion, and they filed a motion for partial summary judgment.[3] Their summary judgment evidence showed that Firestone had patented an invention covering a tire-and-rim combination. This patent incorporated a bead seat on the *rim* and a bead on the tire, commonly referred to as a 15–degree bead seat taper. This design allowed a 16–inch diameter tire to be placed onto and inflated on a 16.5–inch diameter wheel. This combination leads to a violent explosion. The wheel that allegedly caused Jimmy's death included an application of the 15–degree bead seat taper.

The trial court heard argument on Firestone's summary judgment motion and granted judgment favorable to Firestone on all the Barajases's claims. It further ordered that the Barajases take nothing by their claims against Firestone.

In reviewing a summary judgment record, we must decide whether a disputed

---

**2.** The Barajases' summary judgment evidence includes the affidavit of Dr. Alan Milner, a metallurgist and engineer. He stated that a wheel included a disc (the portion of the wheel which contains the bolt holes) and a rim (the portion of the wheel upon which the tire was mounted).

**3.** The Barajases had filed a Motion For Partial Summary Judgment to declare Kelsey–Hayes Company the manufacturer of the wheel in question. The trial court granted this motion. The appellate record includes the motion and the evidence to support it.

material fact issue exists that would preclude a summary judgment. *Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 736 (Tex.1990); *Bayouth v. Lion Oil Co.*, 671 S.W.2d 867, 868 (Tex.1984). We indulge every reasonable inference in the non-movants' favor and resolve any doubt in their favor. *Wilcox v. St. Mary's Univ.*, 531 S.W.2d 589, 593 (Tex. 1975). The question on appeal is not whether the summary judgment proof raises a fact issue with respect to essential elements of a plaintiff's claim, but whether the summary judgment proof confirms that the movant is entitled to summary judgment as a matter of law. *Gonzalez*, 795 S.W.2d at 736

By points one and two, the Barajases assert that the trial court erred in granting summary judgment favorable to Firestone on their negligence claims.

■ The common-law doctrine of negligence consists of three elements: 1) a legal duty owed by one person to another; 2) a breach of that duty; and 3) damages proximately resulting from the breach. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990); *Midkiff v. Hines*, 866 S.W.2d 328, 331 (Tex.App.—Houston [1st Dist.] 1993, no writ).

In *Alm v. Aluminum Co. of Am.*,[4] the Texas Supreme Court explained that a manufacturer or designer of a product owed a duty to a consumer. In *Alm*, Alcoa had designed, patented, manufactured, and marketed a closure system for applying aluminum caps to carbonated soft-drink bottles. It sold one of these capping machines to JFW Enterprises, Inc. James Alm suffered an injury when an aluminum bottle cap blew off a bottle of 7-Up. He had bought the product at a supermarket. The supermarket had purchased the bottle from JFW.

Alm sued Alcoa under theories of strict liability and negligence. Alcoa argued that it owed no duty to warn Alm as it was not the manufacturer or seller of any component part or the final product which allegedly injured Alm. (Alcoa was the designer and marketer of the closure process, the designer of the cap, and the designer, manufacturer,

and seller of the capping machine.) The Texas Supreme Court stated:

> A manufacturer has long been held to have a duty to exercise ordinary care in the design of a product. [citation omitted] A designer who is not also the manufacturer should share the same duty to develop a safe design. Alcoa has a duty to exercise ordinary care in the design of its closure system....
>
> A manufacturer, as well as all suppliers of a product, also has a duty to inform users of hazards associated with the use of its products. [citation omitted] There is no reason to distinguish a designer, who has intimate knowledge of a designed product, from a retailer, wholesaler or manufacturer.... The issue in a negligent failure to warn case is simply whether a reasonably prudent person in the position of the designer would warn of hazards associated with the designed product....

*Alm*, 717 S.W.2d at 590–91. In *Davis v. Dresser Indus., Inc.*,[5] the Eastland Court of Appeals stated:

> Under Texas law, strict liability for component part manufacturers is limited when the component part is integrated into a larger unit before distribution.... If the component part manufacturer does not take part in the design or assembly of the final system or product, he is not liable for defects in the final product *if the component part itself is not defective.*

*Davis*, 800 S.W.2d at 370 (emphasis added).

■ In this case, the Barajases pleaded that Firestone had designed, manufactured, or sold the defective wheel/rim in question, or a defective component part thereof. The party moving for summary judgment must negate every basis upon which the plaintiff could urge under the pleadings. Firestone's summary judgment proof does not negate all the Barajases' allegations. Firestone has not negated the outstanding theory that it manufactured, designed, or sold a component part of the wheel that allegedly killed Jimmy Ba-

---

4. 717 S.W.2d 588 (Tex.1986).

5. 800 S.W.2d 369 (Tex.App.—Eastland 1990, writ denied).

rajas. We sustain point two and that portion of point one concerning negligence.

■ By points one and three, the Barajases assert that the trial court erred in granting summary judgment favorable to Firestone on their strict products liability claims. In Texas, the RESTATEMENT (SECOND) OF TORTS § 402A (1965) governs claims for strict liability in tort. *Lubbock Mfg. Co. v. Sames,* 598 S.W.2d 234, 236 (Tex.1980); *Armstrong Rubber Co. v. Urquidez,* 570 S.W.2d 374, 375–76 (Tex.1978). Section 402A defines the cause of action as follows:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> (a) the seller is engaged in the business of selling such a product, and
>
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

*Lubbock Mfg. Co.,* 598 S.W.2d at 236 (citing, RESTATEMENT (SECOND) OF TORTS § 402A (1965)); *see also* TEX.CIV.PRAC. & REM.CODE ANN. § 82.005 (Vernon Supp.1994).

■ The Restatement imposes liability on sellers of defective products that are unreasonably dangerous and cause damage to a user or consumer. The rule applies to any person engaged in the business of selling products for use or consumption. RESTATEMENT (SECOND) OF TORTS § 402A, comment *f* (1965). To incur liability, the defendant does not have to actually sell the product; engaging in the business of introducing the product into channels of commerce is sufficient. *Armstrong Rubber Co.,* 570 S.W.2d at 375.

■ The policy underlying the imposition of strict liability in products cases is that a party engaged in the business of introducing products into the stream of commerce should incur liability for physical harm caused by those products if, by reason of defective design or manufacture, they are unreasonably dangerous to the user or consumer. *Bennett*

*v. Span Indus., Inc.,* 628 S.W.2d 470, 472 (Tex.App.—Texarkana 1981, writ ref'd n.r.e.).

■ In the instant case, Firestone did not negate the Barajases' allegations that it had engaged in the business of introducing the wheel in question, or a component part thereof, into the channels of commerce. We sustain point three and that portion of point one concerning strict liability.

By points one and four, the Barajases assert that the trial court erred in granting summary judgment favorable to Firestone on their conspiracy claims.

Firestone's motion for summary judgment attempted to dispose of the civil-conspiracy claims as generally derivative of the negligence and strict-liability claims. The Barajases alleged that Firestone and others had consciously and knowingly combined and conspired: 1) to engage in an intended course of conduct to conceal and improperly distribute unsatisfactory information about, and prevent the proper distribution of information about, the dangers of a 16–inch tire and a 16.5–inch wheel/rim mismatch, similar to the occurrence in this suit; and 2) to design, manufacture, distribute, promote, and sell defective and unreasonably dangerous tires and wheels/rims, including those at issue in this case. Firestone and the others performed acts to affect the intended course of conduct which resulted in Jimmy's death.

In *Rogers v. R.J. Reynolds Tobacco Co.,*[6] the issue was whether a plaintiff could hold non-supplying cigarette manufacturers and other associations and entities liable on a civil-conspiracy theory. In *Rogers,* the Beaumont Court of Appeals reviewed the Texas Supreme Court's decision in *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*[7] and stated that:

> We conclude that a correct analysis of *Schlumberger, supra,* makes it clear that the Supreme Court was *saying only* that conspirators must intend to engage in the course of conduct that results in the injury and that the course of conduct must be known to them. The liability may then be

---

6. 761 S.W.2d 788 (Tex.App.—Beaumont 1988, writ denied).

7. 435 S.W.2d 854 (Tex.1968).

joint. The course of conduct need not be to commit an intentional, separate, underlying tort. *Schlumberger, supra,* stands for the proposition that a person, or defendant, cannot *inadvertently become a member of a civil conspiracy.* Indeed, he or it must consciously and knowingly combine with others to engage in an intended course of conduct and perform some acts to implement the intended course of conduct and set it on its way. Thus, we conclude that the course of conduct, itself, agreed to by the civil conspirators, does not have to involve a separate, distinct intentional tort to impose civil liability.

*Rogers,* 761 S.W.2d at 797 (emphasis in original).

■ In the instant case, Firestone did not negate the Barajases' allegations that it had consciously and knowingly combined and conspired with others to engage in an intended course of conduct which resulted in Jimmy's death. We sustain point four and that portion of point one concerning civil conspiracy.

We REVERSE the judgment and REMAND the case for trial.