**FIRESTONE STEEL PRODUCTS COMPANY, formerly a Division of the Firestone Tire & Rubber Company, Accuride Corporation, the Firestone Tire & Rubber Company, and Bridgestone/Firestone, Inc., Petitioners,**

v.

**Manuel BARAJAS and Luisa Barajas, Respondents.**

No. 95–0382.

Supreme Court of Texas.

Argued Oct. 11, 1995.

Decided June 28, 1996.

Rehearing Overruled Sept. 19, 1996.

Maria Wyckoff Boyce, Matthew P. Eastus, James Edward Maloney, Houston, for Petitioners.

William R. Edwards, Corpus Christi, for Respondents.

BAKER, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, GONZALEZ, HECHT, CORNYN, SPECTOR, OWEN, and ABBOTT, Justices, join.

This is a wrongful death case based on allegations of negligence, strict products liability, and civil conspiracy against Firestone Steel Products Company and others. The trial court granted summary judgment for Firestone. The court of appeals reversed and remanded the cause for trial. 895 S.W.2d 789. We reverse the court of appeals' judgment and render judgment for Firestone. We hold that in the circumstances of this case, the original designer of a general product concept that is copied, modified and used by a manufacturer is not liable for injuries resulting from the use of the manufacturer's product.

## I. THE BACKGROUND FACTS

### A. The Wheel Design

In the late 1950's, Firestone designed and patented a new single-piece wheel known as the 15 degree bead seat taper. For the first time, the design permitted installation of a tubeless tire on a wheel. Firestone's initial 15 degree bead seat taper wheel was a 22.5–inch wheel for heavy trucks. The design made it possible to use tubeless tires, instead of tube-type tires, on trucks. Firestone allowed the entire industry to use the design without charging a license fee under its patent.

Firestone's original design was for larger size tires and rims used for 18–wheel semi-tractor trailer rigs. In the mid–1960's, Firestone developed a 15 degree bead seat taper wheel with a 16.5–inch nominal diameter. Truck owners could use this wheel on lighter trucks such as 3/4– or 1–ton pick-ups. Firestone's innovation was not a single wheel design, but a dual wheel with two tires side by side. This wheel is used only with 8– or 9–inch tires, and only for dual-wheel applications.

Firestone patented its design. However, it granted royalty-free licenses of its design for domestic manufacture of tires and wheels. Firestone sought to profit, not from licensure of its patent, but from industry use of products that would help build customer demand for Firestone's own products.

Kelsey–Hayes Company modified Firestone's original 15 degree bead seat taper wheel design to design its own wheel. Kelsey–Hayes' design changed Firestone's original patented wheel design by making it 16.5 inches in diameter, by making it narrower to fit only 6– or 6.75 inch tires, and by making it with a "hump bead." Kelsey–Hayes' design was only for a single wheel by itself, not a dual wheel. Kelsey–Hayes manufactured its own 16.5 hump bead wheel. Firestone did not participate in the manufacture or marketing of Kelsey–Hayes' tires in any way, and did not collect a royalty from Kelsey–Hayes for use of Firestone's patented design.

### B. The Accident

In the early 1970's, the tire and wheel industry began receiving reports of accidents occurring when tire mounters tried to mount and inflate 16–inch tires on 16.5–inch wheels. The Rubber Manufacturers Association, a tire industry group that monitors after-market problems, developed sidewall warnings for 16–inch tires.

One morning, Jimmy Barajas apparently attempted to fix a flat tire on a 3/4–ton pickup. He apparently tried to put a 16–inch tire made by General Tire Company on a 16.5–inch wheel made by Kelsey–Hayes Company. The tire exploded, fatally injuring Jimmy. No one witnessed the accident.

### C. The Litigation

#### 1. In the Trial Court

Jimmy's parents, Manuel and Luisa Barajas, sued Firestone, General Tire, Kelsey–Hayes, the Budd Company, and others for their son's wrongful death. They alleged that Firestone was liable for Jimmy's death

based on claims of strict products liability and negligence. The Barajases asserted that Firestone had originally designed, manufactured and sold a component part of the wheel in question. The Barajases also alleged that Firestone engaged in a civil conspiracy to conceal and obscure the hidden dangers of trying to mount mismatched tires and wheels.

Firestone answered and moved for summary judgment. Firestone alleged in its motion that its summary judgment evidence showed, as a matter of law, that it did not design, manufacture or sell the wheel in question. In support of its motion, Firestone relied on its expert witness' deposition. Firestone also relied upon the Barajases' partial motion for summary judgment against Kelsey–Hayes and their summary judgment evidence that showed, as a matter of law, Kelsey–Hayes manufactured the wheel in question. Firestone also argued that it could not be liable based upon its original patent.

The trial court heard both motions at the same time. The trial court granted the Barajases' a partial summary judgment, holding Kelsey–Hayes manufactured the wheel. The trial court also granted Firestone a summary judgment on all the Barajases' claims and rendered a take nothing judgment for Firestone against the Barajases.

## 2. On Appeal

The Barajases appealed the take nothing judgment. They contended that Firestone did not conclusively negate an essential element of their strict products liability, negligence and civil conspiracy causes of action. Specifically, they claimed that Firestone did not negate their allegations that Firestone designed, manufactured and sold a component part of the wheel in question. They argued that Firestone was liable for faulty design of the tire and wheel that killed Jimmy Barajas because of Firestone's original patent.

The court of appeals agreed with the Barajases, and held that Firestone's summary judgment proof did not negate all the Barajases' allegations. Specifically, it held that Firestone did not negate:

(1) the outstanding theory that Firestone manufactured, designed or sold a component part of the wheel that allegedly killed Jimmy Barajas;

(2) the allegations that Firestone had engaged in the business of introducing the wheel in question, or a component part thereof, into the channels of commerce; and

(3) the allegations that Firestone had consciously and knowingly combined and conspired with others to engage in an intended course of conduct which resulted in Jimmy's death.

## 3. Application for Writ of Error

In its Application for Writ of Error, Firestone argues that the court of appeals erred because it improperly held that Firestone's summary judgment evidence did not negate the Barajases' claims that Firestone manufactured, designed or sold a component part of the wheel that allegedly killed Jimmy Barajas. Firestone also argues that the court of appeals erred in concluding that Firestone's original design idea could subject Firestone to liability for injury caused by a product that was designed, manufactured and sold by a different entity. Firestone argues that the court of appeals' decision creates an expansive new cause of action for original design defects that is not recognized under strict liability tort law in Texas.

The Barajases respond that the court of appeals was correct in reversing Firestone's summary judgment. The Barajases assert that Firestone's summary judgment motion and proof did not meet the Barajases' allegations and proof that: (1) Firestone originally designed, patented, licensed and marketed the tire/rim combination using the 15–degree–bead–taper and low-flange-height features; (2) Firestone was the cause and the primary cause of such design becoming a standard for the tire-wheel industry; (3) Firestone was a producing, proximate and legal cause of the use of that design in the wheel in question; (4) Firestone originally designed, initiated, promoted, marketed and introduced to the tire-wheel and vehicle industries the 16.5–inch nominal diameter

drop-center single piece wheel/rim design such as the wheel in question; and (5) but for Firestone, this system would not exist today.

The Barajas further argue that Firestone had a duty to warn users including their son, Jimmy, of the hazards associated with the use of its products. The Barajases conclude that because Firestone patented, marketed and licensed the 15–degree–bead–taper design and the low-flange-height feature and the 16.5–inch wheel, Firestone should be held accountable the same as if Firestone had manufactured the particular wheel in question.

We granted Firestone's application for writ of error.

## II. APPLICABLE LAW

### A. NEGLIGENCE

■ At common law, a negligence cause of action consists of: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). A prerequisite to tort liability is the existence of a legally cognizable duty. *Graff v. Beard*, 858 S.W.2d 918, 919 (Tex.1993). Whether a duty exists is a question of law. *Joseph E. Seagram & Sons v. McGuire*, 814 S.W.2d 385, 387 (Tex.1991); *Greater Houston Transp. Co.*, 801 S.W.2d at 525.

### B. STRICT PRODUCTS LIABILITY

■ In Texas, section 402A of the RESTATEMENT (SECOND) OF TORTS governs claims for strict liability in tort. *See* RESTATEMENT (SECOND) OF TORTS § 402A (1965); *Lubbock Mfg. Co. v. Sames*, 598 S.W.2d 234, 236 (Tex. 1980); *Armstrong Rubber Co. v. Urquidez*, 570 S.W.2d 374, 375–76 (Tex.1978). Section 402A defines the cause of action as:

(1) one who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

RESTATEMENT (SECOND) OF TORTS § 402A (1965); *Lubbock Mfg. Co.*, 598 S.W.2d at 236.

■ The rule applies to any person engaged in the business of selling products for use or consumption. *Armstrong Rubber Co.*, 570 S.W.2d at 375. To incur liability, a defendant does not have to actually sell the product; introducing the product into channels of commerce is enough. *Armstrong Rubber Co.*, 570 S.W.2d at 375. However, the product must reach the user or consumer without substantial change in the condition it left the manufacturer's or seller's possession. *See* RESTATEMENT (SECOND) OF TORTS § 402A(1)(b) (1965); *Armstrong Rubber Co.*, 570 S.W.2d at 375.

■ If the original designer of a system or prototype gives the design to another party, this action alone is not enough to impose liability under a strict products liability theory. *See Piscitello v. Hobart Corp.*, 799 F.Supp. 224, 225–26 (D.Mass.1992)(applying Massachusetts law and holding that where a defendant did not manufacture, distribute or sell a particular product at issue, but rather only designed the original product after which most of the products had been patterned over the years, does not impose strict liability upon the original designer); *Snyder v. ISC Alloys, Ltd.*, 772 F.Supp. 244, 250 n. 4 (W.D.Pa.1991)(applying Pennsylvania law and stating that under § 402A, a seller can be held strictly liable only if the product reaches the injured user unchanged).

■ Mere preparation of drawings or a prototype, does not constitute designing the eventual product from which liability does lie. *See Zanzig v. H.P.M. Corp.*, 134 Ill.App.3d 617, 89 Ill.Dec. 461, 465, 480 N.E.2d 1204, 1208 (1985). *See also Talley v. City Tank Corp.*, 158 Ga.App. 130, 279 S.E.2d 264, 269 (1981); *Chemical Design v. American Standard*, 847 S.W.2d 488, 490–91 (Mo.Ct.App. 1993).

■ In Texas, the existence of a duty to warn of the dangers of an alleged defective product is a question of law. *Joseph E.*

*Seagram & Sons v. McGuire,* 814 S.W.2d 385, 387 (Tex.1991). A manufacturer generally does not have a duty to warn or instruct about another manufacturer's products, even though a third party might use those products in connection with the manufacturer's own product. *See Walton v. Harnischfeger,* 796 S.W.2d 225, 226 (Tex.App.—San Antonio 1990, writ denied). Other jurisdictions reach the same conclusion. *See Rastelli v. Goodyear Tire & Rubber Co.,* 79 N.Y.2d 289, 582 N.Y.S.2d 373, 591 N.E.2d 222, 225–26 (1992); *Mitchell v. Sky Climber, Inc.,* 396 Mass. 629, 487 N.E.2d 1374–1376 (1986).

■ Most jurisdictions require more than the mere act of licensing a design to impose strict products liability, and require some purposeful activity with respect to the design by the licensor as well. *See* 1A LOUIS R. FRUMER AND MELVIN I. FRIEDMAN, PRODUCTS LIABILITY § 5.15 (1995); *See also* 1 M. STUART MADDEN, PRODUCTS LIABILITY § 6.17 (1998). A mere licensor is not subject to strict products liability. *See, e.g., Mechanical Rubber and Supply Co., v. Caterpillar Tractor Co.,* 80 Ill.App.3d 262, 35 Ill.Dec. 656, 399 N.E.2d 722, 723–24 (1980); *Harmon v. National Auto. Parts Ass'n,* 720 F.Supp. 79, 81 (N.D.Miss.1989); *Ogg v. City of Springfield,* 121 Ill.App.3d 25, 76 Ill.Dec. 531, 536, 458 N.E.2d 1331, 1336 (1984); *Harrison v. ITT Corp.,* 198 A.D.2d 50, 603 N.Y.S.2d 826 (1993).

■ Under traditional products liability law, the plaintiff must prove the defendant supplied the product that caused the injury. *Gaulding v. Celotex Corp.,* 772 S.W.2d 66, 68 (Tex.1989); *Armstrong Rubber Co.,* 570 S.W.2d at 376. It is not enough that the seller merely introduced products of similar design and manufacture into the stream of commerce. *Armstrong Rubber Co.,* 570 S.W.2d at 376.

### C. CIVIL CONSPIRACY

■ In Texas, a civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Triplex Communications, Inc. v. Riley,* 900 S.W.2d 716, 719 (Tex.1995); *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex.1983). The "gist of a civil conspiracy" is the injury the conspirators intend to cause. *Triplex Communications,* 900 S.W.2d at 720; *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.,* 435 S.W.2d 854, 856 (Tex.1968).

■ Civil conspiracy requires specific intent. For a civil conspiracy to arise, the parties must be aware of the harm or the wrongful conduct at the beginning of the combination or agreement. *See Triplex Communications,* 900 S.W.2d at 719. One cannot agree, expressly or tacitly, to commit a wrong about which he has no knowledge. *See Schlumberger Well Surveying Corp.,* 435 S.W.2d at 857. Given the specific intent requirement, parties cannot engage in a civil conspiracy to be negligent. *Triplex Communications,* 900 S.W.2d at 720 n. 2.

## III. THE SUMMARY JUDGMENTS

### A. THE BARAJASES' SUMMARY JUDGMENT

In the trial court, the Barajases' moved for partial summary judgment against Kelsey–Hayes. The Barajas alleged that their summary judgment evidence showed, as a matter of law, that Kelsey–Hayes manufactured the wheel that caused Jimmy Barajas' death. Their evidence consisted of photographs of the wheel, the Budd Company's expert witness' deposition, Firestone's in-house expert's deposition, and the Barajas' expert witness' affidavit. All the experts examined the photographs of the wheel.

The Barajases' expert testified that he compared the photographs with wheels he knew Kelsey–Hayes manufactured. He said the wheel in question was a 16.5–inch nominal diameter wheel. The wheel exhibited certain characteristics that assisted in identifying the manufacturer. These characteristics included: (1) the disc was riveted to the rim as opposed to being welded; (2) a single locating pin on the disc the center which was on the same diameter as the centers of the bolt holes; and (3) the location and shape of the hub cap humps. After reviewing the photographs, other Kelsey–Hayes wheels, and Kelsey–Hayes drawings, and taking into account the characteristics of the wheel in

question, the expert concluded Kelsey–Hayes manufactured the wheel.

He further stated that three other wheel manufacturers did not manufacture the wheel. He stated that a distinctive design feature of the wheel was that the disc was riveted to the rim. Whereas, in the case of the other three manufacturers, the disc was welded to the rim. He did not discuss any wheel Firestone manufactured.

The Barajases offered the Budd Company expert's deposition. He testified that the wheel exhibited characteristics consistent with wheels Kelsey–Hayes manufactured. He identified the characteristics as rivets connecting the disc and rim instead of welds and the location and shape of the hub cap humps. He had not seen this combination of characteristics on any wheel manufactured by anyone other than Kelsey–Hayes.

The Firestone expert testified that the Kelsey–Hayes wheel was consistent with the characteristics of the wheel in question. He said he had never seen a wheel with the characteristics of the wheel other than one made by Kelsey–Hayes.

### B. FIRESTONE'S SUMMARY JUDGMENT

Firestone's principal summary judgment evidence was its expert witness' deposition. This expert was the same expert the Barajases relied on in their partial summary judgment against Kelsey–Hayes. Firestone also relied on the Barajases' summary judgment evidence.

Firestone's expert testified that Firestone's original design for a 15 degree bead seat taper wheel was for a 22.5–inch wheel suitable for an 18–wheel semi-tractor trailer rig. Later Firestone designed a 15–degree bead seat taper wheel with a 16.5–inch nominal diameter. This design was a dual wheel for use with two tires side by side. This design could be used only with 8– or 9–inch tires, and only for dual wheel application.

Firestone's summary judgment evidence also showed that Kelsey–Hayes modified Firestone's original 15 degree bead seat taper wheel design to design its own wheel. The Kelsey–Hayes design used the 15 degree bead seat taper. However, Kelsey–Hayes

made its 16.5–inch nominal diameter wheel narrower so it would fit only 6– or 6.75–inch tires, and made it with a "hump bead." The Kelsey–Hayes wheel would fit only a single wheel by itself. Kelsey–Hayes manufactured its own narrow 16.5–inch hump bead wheel.

### IV. THE ISSUE

The summary judgment evidence is virtually undisputed that Kelsey–Hayes manufactured and sold the wheel. The issue is whether Firestone designed all or a component part of the wheel that caused Jimmy Barajas' death.

The summary judgment evidence conclusively shows that the Kelsey–Hayes wheel is substantially different from Firestone's original patented 15 degree bead seat taper wheel or Firestone's modified 15 degree bead seat taper wheel.

The principal differences are: (1) Firestone's original 15 degree bead seat taper wheel was for a 22–inch tractor-trailer truck wheel—the Kelsey–Hayes design was for a 16.5–inch small truck wheel; (2) the Firestone modified design was for a 16.5–inch nominal diameter wheel for a 8– or 9–inch tire application—the Kelsey–Hayes design was for a 16.5–inch wheel for a 6– or 6.75–inch tire application; (3) Firestone welded the disc to the rim—Kelsey-Hayes riveted the disc to the rim; (4) Firestone's wheel had no hub cap hump—Kelsey-Hayes' wheel had a hub cap hump; and (5) Firestone's 16.5–inch wheel was for dual wheel application—Kelsey-Hayes' 16.5–inch wheel was for single wheel application.

### V. THE BARAJASES' CAUSES OF ACTION

#### A. NEGLIGENCE

 Firestone conclusively showed it did not design, manufacture or sell the wheel in question. Accordingly, Firestone owed no duty to the Barajases. Firestone negated an essential element of the Barajases' negligence cause of action. *See Graff,* 858 S.W.2d at 919. The Barajases and the court of appeals rely on *Alm v. Aluminum Co. of America,* 717 S.W.2d 588 (Tex.1986), to sup-

port the claim that a designer or manufacturer of a product owes a duty to a consumer. However, *Alm* is easily distinguished on its facts. In *Alm*, Alcoa designed and marketed the bottle closure process. Alcoa designed the bottle cap. Alcoa designed, manufactured, and sold the bottle capping machine. *See Alm*, 717 S.W.2d at 590.

## B. STRICT PRODUCTS LIABILITY

■ Firestone proved that Kelsey–Hayes significantly changed the wheel's design. These design differences are enough to show, as a matter of law, that Firestone did not design all or a component part of the wheel. Firestone's summary judgment evidence showed that the product it originally designed and later modified reached the user with substantial changes in the condition it originally left Firestone's possession. *See* RESTATEMENT (SECOND) OF TORTS § 402A(1)(b) (1965); *Armstrong Rubber Co.*, 570 S.W.2d at 375. Firestone proved it did not introduce the wheel or a component part into the channels of commerce. It is not enough that the original designer merely introduce a product of similar design into the stream of commerce. *See Armstrong Rubber Co.*, 570 S.W.2d at 376. Firestone proved that it did not supply the product that caused Jimmy Barajas' death. *See Gaulding*, 772 S.W.2d at 68.

The Barajases' theory is that Firestone should be liable in strict liability because it developed a design idea that another manufacturer—Kelsey-Hayes—copied, modified, and used. Under this theory, the automobile manufacturer who first developed air bags could be held liable because other manufacturers used the idea, modified the design, and incorporated air bags in their own cars. If there were a successor company of the Wright Brothers, this company could be held liable because other airplane manufacturers borrowed the idea of aerodynamic wings. This is not the law.

■ As we have already held, Firestone did not design, manufacture or sell the particular wheel in question. The summary judgment evidence shows only that Firestone originally designed and licensed the 15–degree–bead taper and low-flange-height fea-

tures of an automobile wheel. For a licensor to be strictly liable, the licensor must be an integral part of the overall marketing process that should bear the cost of injuries resulting from defective products. Imposition of strict liability demands more than an incidental role in the overall marketing program of the product. Here, the undisputed summary judgment evidence shows only that Firestone was the original designer and that it was not involved in the production, marketing or distribution of the Kelsey–Hayes defective product. Accordingly, the court of appeals erred in reversing summary judgment for Firestone under these circumstances. *See Piscitello*, 799 F.Supp. at 225–26.

■ We reach the same conclusion about the Barajases' assertion that because Firestone was the original designer of the bead-taper, low-flange wheel that it had a duty to warn their son about the alleged defective nature of the Kelsey–Hayes product. A manufacturer does not have a duty to warn or instruct about another manufacturer's products, though those products might be used in connection with the manufacturer's own products. *Walton*, 796 S.W.2d at 226; *see also Baughman v. General Motors Corp.*, 780 F.2d 1131, 1133 (4th Cir.1986).

■ Additionally, Firestone's summary judgment evidence showed that it only introduced a concept, the 15–degree bead seat taper wheel, to the industry. The concept is an intangible which is not a product within the meaning of the RESTATEMENT (SECOND) OF TORTS. To impose strict products liability upon Firestone for the introduction of a concept, under the facts of this case, is contrary to the very essence of a products liability cause of action under Section 402A of the RESTATEMENT (SECOND) OF TORTS. *Way v. Boy Scouts of America*, 856 S.W.2d 230, 239 (Tex.App.—Dallas 1993, writ denied).

Accordingly, Firestone negated essential elements of the Barajases' strict products liability cause of action. *See* RESTATEMENT (SECOND) OF TORTS § 402A(1)(a), (b) (1965); *Lubbock Mfg. Co.*, 598 S.W.2d at 236; *Armstrong Rubber Co.*, 570 S.W.2d at 375.

## C. CIVIL CONSPIRACY

 Firestone proved it had no duty to the Barajases. Accordingly, Firestone negated the Barajases' civil conspiracy claim as a matter of law. Civil conspiracy is an intentional tort. *Massey*, 652 S.W.2d at 933. For a civil conspiracy to arise, the parties must be aware of the harm or wrongful conduct at the beginning of the agreement. *Triplex Communications*, 900 S.W.2d at 719. Because a conspiracy requires intent, parties cannot conspire to be negligent. *Triplex Communications*, 900 S.W.2d at 720 n. 2.

The court of appeals relied on *Rogers v. R.J. Reynolds Tobacco Co.*, 761 S.W.2d 788 (Tex.App.—Beaumont 1988, writ denied), to conclude that a course of conduct, agreed upon by conspirators, does not have to involve a separate, distinct intentional tort to impose liability. *See Barajas*, 895 S.W.2d at 794. However, in *Triplex Communications*, this Court expressly disapproved *Rogers* to the extent it held there can be a civil conspiracy to be negligent. *See Triplex Communications*, 900 S.W.2d at 720 n. 2.

## VI. SUMMARY

Based upon the specific and unique facts of this case, we hold Firestone negated an essential element of each of the Barajases' causes of action. Firestone proved, as a matter of law, that it did not design, manufacture, or sell all or a component part of the wheel that caused Jimmy Barajas' death. We reverse the court of appeals' judgment, and render judgment that the Barajases take nothing from Firestone.

ENOCH, J., filed an opinion, concurring in part and dissenting in part.

ENOCH, Justice, concurring and dissenting.

The Court misconstrues the Barajases' allegations. There is no dispute between the parties that Firestone did not design, manufacture, or sell the particular wheel that killed Jimmy Barajas. Nor is there any dispute that Firestone did design the 15–degree bead seat taper with low flange height. The fact that Firestone did not design, manufacture, or sell the particular wheel at issue in this case is not dispositive of all the Barajases' claims. The Barajases specifically allege that Firestone's original design for the 15–degree bead seat taper with low flange height is *the* design feature of the wheel that permits the mismatch between tire and wheel that occurred in this case and that caused the tire to explode. The issue, then, is not whether Firestone designed, manufactured, or sold the particular wheel in this case, but whether Firestone, solely as a designer of a component part of a product that causes injury, can be liable in strict products liability or negligence for its design.

## I

I agree with the Court that Firestone is not liable in strict products liability. Strict liability rests on the defendant placing into the stream of commerce a defective product. *Armstrong Rubber Co. v. Urquidez*, 570 S.W.2d 374, 376 (Tex.1978). Firestone did not place any product into the stream of commerce. Rather, by granting a royalty-free license, Firestone only placed its design in the stream of commerce.

I note that a non-manufacturer may, under certain circumstances, be liable in the same manner as a manufacturer or seller of a defective product. *See* RESTATEMENT (SECOND) OF TORTS § 400 (1965) (Selling as Own Product Chattel Made by Another). For example, a trademark licensor may be liable as an apparent manufacturer when the licensor is significantly involved in the manufacturing, marketing, or distribution of the defective product. *See Torres v. Goodyear Tire & Rubber Co.*, 163 Ariz. 88, 786 P.2d 939, 945 (1990) (trademark licensor that significantly participates in the overall process by which the product reaches consumers, and who has the right to control the incidents of manufacture or distribution is liable under section 402A of the Restatement (Second)); *Burkert v. Petrol Plus*, 216 Conn. 65, 579 A.2d 26, 35 (1990) (trademark licensor, absent any involvement in the production, marketing, or distribution of defective product, is not liable in strict tort liability or negligence); *Connelly v. Uniroyal, Inc.*, 75 Ill.2d 393, 27 Ill.Dec. 343, 351, 389 N.E.2d 155, 163

(1979) (trademark licensor liable in strict liability as integral part of the marketing enterprise and participation in the profits reaped by placing a defective product in the stream of commerce); *Stanford v. Dairy Queen Prods.*, 623 S.W.2d 797, 805 (Tex.App.—Austin 1981, writ ref'd n.r.e.) (trademark licensor that only authorized use of trade name was not an "actual vendor" of the defective product under section 400 of the Restatement (Second)); *see also* Rockwell, Annotation, *Trademark Licensor's Liability for Injury or Death Allegedly Due to Defect in Licensed Product*, 90 A.L.R. 4th 981 (1990); KEETON ET AL., PROSSER & KEETON ON THE LAW OF TORTS § 100 (5th ed.1984) (strict liability may extend to licensor who participates in the construction and sale of products made pursuant to a patent). But a mere designer of a defective product is not liable in strict liability because the apparent manufacturer doctrine does not apply when the party is not involved in the manufacture, sale, or installation of the product. *Affiliated FM Ins. Co. v. Trane Co.*, 831 F.2d 153, 155–56 (7th Cir. 1987).

As Firestone is not a manufacturer, seller, or apparent manufacturer of the wheel causing Jimmy Barajas's death, Firestone is not liable in strict products liability for the Barajases' damages. I concur with the Court's judgment reversing and rendering judgment for Firestone on the Barajases' strict products liability claims.

## II

I do not agree, however, with the Court's treatment of the Barajases' negligence claims. Unlike strict products liability, liability in negligence is not premised on placing a defective product into the stream of commerce. The Court in *Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 591 (Tex.1986), held that a designer who was not a manufacturer or seller of the product causing the injury had a duty to exercise ordinary care in its design and a duty to warn users of hazards associated with the use of the designed product.

In *Alm*, the plaintiff sued the Aluminum Company of America (Alcoa) for injuries he sustained when a bottle cap exploded off a soda bottle he had purchased at a grocery store. Alcoa designed the bottle cap but did not manufacture or sell the bottle cap or the bottle. Alcoa did design, manufacture, and sell a bottle capping machine, and designed and marketed a process for capping bottles. The Court expressly defined the issue in terms of the duty owed by a "designer who is not a manufacturer." *Alm*, 717 S.W.2d at 590. The Court first recognized that a designer who is not also the manufacturer should share the same duty to develop a safe design. *Id.* at 591. It makes little sense to hold liable a manufacturer who purchased or obtained by license someone else's design, but not the party ultimately responsible for the design. A negligent design claim should not fail simply because the design is divorced from the manufacture of the product. Moreover, while a manufacturer may have independent liability for failing to test a product design, it should have a right of indemnity against a designer who licensed or sold a negligent design to the manufacturer.

The Court misconstrues the Barajases' allegations to avoid *Alm*. The Court concludes that because Firestone did not design, manufacture, or sell the wheel in question, Firestone owed no duty. 927 S.W.2d at 613. Contrary to the Court's framing of the issue, the Barajases allege that Firestone designed *the* feature of the Kelsey–Hayes wheel that caused the injury—the 15–degree bead seat taper with low flange height. The fact that Firestone did not design, manufacture, or sell the particular wheel at issue in this case is irrelevant for a negligent design claim. Firestone designed the feature of the wheel alleged to be defective and alleged to have caused Jimmy Barajas's death. Firestone had a duty to exercise ordinary care in its design of the 15–degree bead seat taper. *Alm*, 717 S.W.2d at 591.

Moreover, the Court's attempt to distinguish *Alm* on its facts is unpersuasive. The sole basis for imposing any design-related duties on Alcoa was as a non-manufacturing designer of *the* bottle capping process that caused the plaintiff's injury. Firestone, as the designer of *the* feature of the wheel alleged to have caused the tire explosion, is no different than Alcoa. Nothing in *Alm*

suggests that the design-related duties derived from the fact that Alcoa did more than design the bottle capping process.

The fact that Firestone has a duty of ordinary care in its design is not dispositive of liability. Unlike strict products liability, in which a plaintiff need only prove the design was defective without regard to the designer's negligence, the Barajases must prove Firestone was negligent in developing its design. Further, in this case there is evidence that Firestone's design was modified by Kelsey–Hayes. Accordingly, the Barajases would face difficult burdens of proof on both breach of duty and causation.

But Firestone sought summary judgment asserting only that because it did not design, manufacture, or sell the particular wheel involved in this case, it owed no duty to Jimmy Barajas. *Alm* recognized a duty of non-manufacturing designers to exercise ordinary care in the design of a product. This duty is not dependent on whether Firestone placed the injury-causing product into the stream of commerce, but rather derives from Firestone's actions as designer. The duty should be the same whether the designer designed the entire product or a component part alleged to have been the cause of injury. Because Firestone designed *the* feature of the wheel alleged to have caused the tire explosion—the 15–degree bead seat taper with low flange height—Firestone owed a duty of ordinary care in its design.

The fact that Firestone's design has become an industry standard does not militate against a duty. Liability should not be more limited the more widely adopted a design is by an industry. To the contrary, a designer who offers up its design for a product through a royalty-free license in the hopes of gaining widespread adoption of the design in the industry militates in favor of a duty.

*Alm* also recognizes a designer's duty to warn of hazards associated with the design. The Court stated:

> There is no reason to distinguish a designer, who has intimate knowledge of a designed product, from a retailer, wholesaler or manufacturer. Alcoa designed the closure system. It is the failure of that system which caused [the plaintiff's] injury.

There can be no justification for requiring a user of Alcoa's closure technology to warn of its hazards while not holding Alcoa to the same duty.

*Alm*, 717 S.W.2d at 591. The Barajases allege a negligent failure to warn claim. Under *Alm*, as a non-manufacturing designer, Firestone has a duty to warn of the hazards associated with its design of the 15–degree bead seat taper if a reasonably prudent person in the same position would have warned of the hazards. *Id.* The Court incorrectly resolves the failure to warn issue by concluding that one manufacturer has no duty to warn or instruct about another manufacturer's product. Firestone's role in this case is not as a manufacturer, but as a designer. *Alm* plainly recognizes a designer's duty to warn of hazards of its design.

\* \* \* \* \* \*

In sum, the Court correctly concludes that Firestone is not liable in strict products liability because the summary judgment evidence establishes that Firestone did not design, manufacture, or sell the particular wheel involved in this case. That summary judgment evidence, however, does not entitle Firestone to summary judgment on the Barajases' negligence claims because those claims are not dependent on having placed the particular product at issue in the stream of commerce. A designer's duty of ordinary care and duty to warn derive from the conduct in designing a product; that duty should not vanish simply because the design is developed by someone other than the manufacturer.

Like the designer in *Alm*, Firestone designed the feature of the product alleged to have caused Jimmy Barajas's death. The Court misconstrues the Barajases' allegations and, in so doing, provides a false basis for distinguishing *Alm*. Firestone owed a designer's duty of ordinary care and duty to warn. It was not entitled to summary judgment on the Barajases' negligence claims. For these reasons, I concur in that part of the Court's judgment reversing the court of appeals' judgment and rendering judgment for Firestone on the Barajases' strict liability claims. I dissent from the Court's judgment

reversing and rendering on the Barajases' negligence claims. I would affirm the reversal of summary judgment on the Barajases' negligence claims and remand those claims to the trial court.