COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-05-109-CV

 

 

PDG GROUP INCORPORATED, MARLIN                                 APPELLANTS

AMUSEMENTS,
L.P., AND DAVID DANIELS

 

                                                   V.

 

J. WALKER HOLLAND AND HOLLAND,                                     APPELLEES

JOHNS,
SCHWARTZ & PENNY, L.L.P.

 

                                              ------------

 

           FROM
THE 236TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Appellants PDG Group
Incorporated, Marlin Amusements, L.P., and David Daniels appeal from a summary
judgment in favor of Appellees J. Walker Holland and the law firm of Holland,
Johns, Schwartz & Penny, L.L.P. We affirm.








                                            Background

This suit involves a dispute
over family-owned businesses.  PDG, a
closely held corporation that provides services to organizations raising funds
through state-sanctioned bingo activities, is owned in equal shares by Daniels
and his siblings, W. Parkinson, P. Greenfield, and G. Graham.  Daniels is PDG=s sole officer and director. 
PDG is the general partner of Marlin. 
Daniels and his siblings are Marlin=s limited partners.  Their
mother, Geneva Parkinson, owns or controls interests in bingo locations
providing PDG=s and Marlin=s income stream.  Beginning in
1988, Holland  provided legal services to
PDG and Marlin. 








Daniels, PDG, and Marlin sued
Holland and his law firm (referred to collectively as AHolland@), Daniels=s siblings (except G. Graham), Daniels=s mother, and others, alleging that Holland conspired with the other
defendants to oust Daniels from his position at PDG and divest him of his
stakes in PDG and Marlin by providing legal advice upon which the other
defendants acted in agreeing upon and executing a plan of action to eliminate
the income stream of PDG and Marlin.[2]  They also alleged that Holland breached his
fiduciary duty to PDG and Marlin when he Arepeatedly had conversations@ with the other defendants about taking action to destroy, and
conspired with them to take action to destroy, PDG and Marlin, all without
Daniels=s knowledge or consent. 

Specifically, Appellants
alleged that in January 2003, two of Daniels=s siblings, W. Parkinson and Greenfield, met with their mother and
Daniels to discuss reorganizing the bingo facilities, and suggested at that
meeting that Daniels relinquish his management functions at PDG and
Marlin.  Daniels objected to any outside
interference or management.  In March
2003, according to Appellants= pleadings, Daniels=s mother retained Bob Schleizer to provide professional consulting
services regarding her bingo facilities, and she, along with W. Parkinson and
Greenfield, worked with Schleizer to remove Daniels from his management role
with PDG and Marlin.  Appellants alleged
that on or about April 10, 2003, Shleizer and Daniels=s mother and two siblings spoke with Holland about dissolving PDG and
Marlin without Daniels=s knowledge
or consent. 








Appellants further pleaded
that after determining that W. Parkinson and Greenfield lacked the votes
necessary to remove Daniels from the business, Schleizer informed Daniels that
his mother wanted W. Parkinson to operate PDG and Marlin and that, if Daniels
refused, she would take steps to dissolve those companies.  According to the petition, Daniels was locked
out of the business premises of PDG and Marlin on June 6, 2003, based on
instructions from Schleizer, and was thereafter denied access to the business
operations.   Appellants alleged that for
the next two months, Daniels and Schleizer engaged in negotiations for the
purchase of Daniels=s interest
in the businesses but that Schleizer ultimately informed Daniels that he would
simply be removed from his position. 
Appellants further alleged that when Daniels arrived at work on
September 15, 2003, his mother, Schleizer, and his two siblings were
interviewing prospective new managers for PDG and Marlin and that thereafter
they engaged in a course of action to coerce clients away from PDG and Marlin,
resulting in a substantial loss of revenue for the companies and loss of salary
to Daniels.  

Holland filed a traditional
motion for summary judgment on both the conspiracy and the breach of fiduciary
duty claims, supported by two affidavits executed by him.  The trial court granted the motion and
severed the claims against Holland from the claims against the other
defendants.  This appeal followed.

                                       Standard of Review








In a summary judgment case,
the issue on appeal is whether the movant met the summary judgment burden by
establishing that no genuine issue of material fact exists and that the movant
is entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c); Sw.
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all
doubts about the existence of a genuine issue of material fact are resolved
against the movant.  Sw. Elec. Power
Co., 73 S.W.3d at 215.

When reviewing a summary
judgment, we take as true all evidence favorable to the nonmovant, and we
indulge every reasonable inference and resolve any doubts in the nonmovant's
favor.  Valence Operating Co. v.
Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  Evidence that favors the movant=s position will not be considered unless it is uncontroverted.  Great Am. Reserve Ins. Co. v. San Antonio
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).








A summary judgment will be
affirmed only if the record establishes that the movant has conclusively proved
all essential elements of the movant=s cause of action or defense as a matter of law.  Clear Creek Basin, 589 S.W.2d at
678.  A defendant who conclusively
negates at least one essential element of a cause of action is entitled to
summary judgment on that claim.  IHS
Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason, 143 S.W.3d
794, 798 (Tex. 2004).  Once the defendant
produces sufficient evidence to establish the right to summary judgment, the
burden shifts to the plaintiff to come forward with competent controverting
evidence raising a genuine issue of material fact with regard to the element
challenged by the defendant.  Centeq
Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995).

Summary judgment based upon
the uncontroverted affidavit of an interested witness is proper if the evidence
is clear, positive and direct, otherwise credible, free from contradictions and
inconsistencies, and could have been readily controverted.  Tex.
R. Civ. P. 166a(c); Trico Techs. Corp. v. Montiel, 949 S.W.2d
308, 310 (Tex. 1997).  ACould have been readily controverted@ does not mean that the affidavit could have been easily and
conveniently rebutted but, rather, indicates that it could have been
effectively countered by opposing affidavit. 
Trico Techs. Corp., 949 S.W.2d at 310.    

                                               Analysis

A major thrust of Appellants= summary judgment response and brief on appeal is aimed at alleged
inconsistencies and misstatements in Holland=s affidavits filed in support of his summary judgment motions.  Before turning to the merits of Holland=s motions, we will consider his affidavits.








In his affidavits, Holland
first averred that, beginning in 1988, he had provided legal services to PDG,
Marlin, and related Parkinson family entities. 
He stated he had worked on specific business transactions and handled a
few collection matters or lease disputes but that he had not acted as general
counsel for any Parkinson family entity. 
He had no knowledge of any dispute among the family members and did not
have any discussions or communications with anyone in PDG or Marlin about the
dissolution of those entities until July 15, 2003, when he received a phone
call from defendant Schleizer, who Awanted to bring [Holland] up to speed on what all had been happening
at PDG [] and Marlin [] during the prior several months.@  Holland stated that he met
Schleizer for lunch on July 27, 2003. 
Schleizer told Holland Ain very general terms[] that [Schleizer] had been retained to consult
with the family and advise them on restructuring the business,@ and they had Aa general
discussion of what all had transpired during the immediately preceding three or
four months and what [Schleizer] had discussed with the members of the
Parkinson family about various alternate future plans for the companies.@  According to Holland=s affidavit, Schleizer did not mention dissolving PDG or Marlin or
diverting their income.  








Holland further averred that
after the July 27 meeting with Schleizer, he was contacted by Daniels as well
as Daniels=s siblings
and mother relating to the events of the previous few months.  According to Holland, AI advised that, because I had a conflict of interest, I could not
provide advice with respect to [the familial dispute] . . . .  There was absolutely no discussion about the
operations or management or income of PDG or Marlin [], or any other [] family
entity.@  Nor did Holland discuss
removing Daniels from the businesses with any family member.  

In response to Holland=s motion for summary judgment, Appellants pointed to several asserted
misstatements, contradictions, and inconsistencies in Holland=s affidavit.  For example,
Holland stated in his affidavit that Daniels=s sister, in her capacity as president of a family entity named ABingo Data Management Services, Inc.,@ contacted him in mid-2002 about dissolving that entity.  Appellants pointed out that Daniels=s sister was not the president of Bingo Data Management Services, Inc.
and that the entity of that name was not a Daniels family business, and
inferred that the conversation must have been about something else.  In response, Holland filed another affidavit
in which he acknowledged that he incorrectly named the company in his original
affidavit and that the correct name was ABingo Data Services, Inc.@  He also attached to his
affidavit the minutes of Bingo Data Services, Inc.=s organizational meeting, which identify Daniels=s sister as the company=s president.  We do not see how
the correction of this mistake creates an inconsistency in Holland=s summary judgment evidence.








Likewise, Appellants
contested Holland=s statement
that his legal services were limited to corporate matters by producing the
application to probate the will of a member of the Daniels family, which
application was signed by Holland as attorney for Daniels=s mother.  But Holland=s affidavit did not state that he had never performed any legal
services for individual members of the family. 
We fail to see how the probate application renders Holland=s credibility suspect.

Appellants further
highlighted alleged inconsistencies within Holland=s affidavit and between his affidavit and other documents.  For example, Appellants contend that Holland=s statement that, during his lunch with Schleizer, A[t]here was absolutely no discussion about . . . any future plans@ is contradicted by the very next sentence in the affidavit, AThere was simply a general discussion of what . . . [Schleizer] had
discussed with [family members] about various alternate future plans . . .
.@  [Emphasis added.]  Contrary to Appellants= contention, it appears obvious that the second sentence describes
Schleizer=s
discussions with members of the family, not his discussions with Holland.  A plain reading of the affidavitCincluding those words omitted by AppellantsCdispels the alleged inconsistency conjured by Appellants= selective reading.








The other alleged
inconsistencies identified by Appellants in Holland=s affidavit are in a similar vein. 
We have considered them all and conclude that, like the example analyzed
above, they are not inconsistencies at all. 
Therefore, we hold that Holland=s affidavit was clear, positive, and direct, otherwise credible and
free from contradictions and inconsistencies and, therefore,  competent summary judgment proof.  See Tex.
R. Civ. P. 166a(c); Trico Techs. Corp., 949 S.W.2d at 310.

                                          Civil Conspiracy

A civil conspiracy is Aa combination by two or more persons to accomplish an unlawful purpose
or to accomplish a lawful purpose by unlawful means.@  Firestone Steel Prods. Co.
v. Barajas, 927 S.W.2d 608, 614 (Tex. 1996).  The essential elements of a civil conspiracy
are (1) two or more persons; (2) an object to be accomplished; (3) a meeting of
the minds on the object or course of action; (4) one or more unlawful, overt
acts; and (5) damages as the proximate result. 
Operation Rescue-Nat=l v. Planned Parenthood, 975 S.W.2d
546, 553 (Tex. 1998).








Holland=s motion for summary judgment alleged that there was no Ameeting of the minds@ because Holland was not aware of the events made the basis of
Appellants= claims
against the other defendants until after those events transpired.  He also alleged that he had not committed any
overt, unlawful act.        Holland=s affidavit conclusively established that the discussions among Holland,
Schleizer, and others occurred sometime after the salient events made the basis
of Appellants= conspiracy
claim and that Holland=s
involvement in those meetings was limited to and consistent with his role as
the from-time-to-time attorney for PDG and Marlin.  Appellants failed to controvert these
assertions with summary judgment evidence of their own.  We therefore hold that Holland conclusively
negated the meeting-of-minds and overt-unlawful-act elements of civil
conspiracy and that the trial court did not err by granting summary judgment on
that claim.  We overrule Appellants= first issue.

                                    Breach of Fiduciary Duty

The focus of a claim for
breach of fiduciary duty is whether an attorney obtained an improper benefit
from representing a client.  Kimleco
Petroleum, Inc. v. Morrison & Shelton, 91 S.W.3d 921, 923 (Tex. App.CFort Worth 2002, pet. denied).  AThe essence of a breach of fiduciary duty involves the >integrity and fidelity= of an attorney.@  Id. 
AA breach of fiduciary duty occurs when an attorney benefits improperly
from the attorney‑client relationship by, among other things,
subordinating his client=s interests
to his own, retaining the client=s funds, using the client=s confidences improperly, taking advantage of the client=s trust, engaging in self‑dealing, or making misrepresentations.@  Id.

In the
breach-of-fiduciary-duty section of their original petition, Appellants alleged
that Holland

repeatedly
had conversations with [Schleizer and Daniels=s
mother and siblings] with respect to matters pertaining to the operation and
dissolution of PDG and Marlin, all without the knowledge and/or consent of
Daniels.  In doing so, [Holland] became
co-conspirators in the agreement to take action to destroy PDG and Marlin, and
such conduct constitutes a breach of the fiduciary duty that [Holland] had
toward PDG and Marlin. 








Thus, Appellants alleged that Holland breached
his fiduciary duty by improperly using Appellants= confidences and by conspiring with the other defendants to Appellants= detriment.[3]  We have already determined that Holland was
entitled to summary judgment on Appellants= conspiracy claim.  We will
therefore focus our fiduciary-duty analysis on the improper-use-of-confidences
aspect of Appellants= claim.








Holland=s affidavit established the following: 
he did not have any discussions before July 15, 2003, with anyone in PDG
or Marlin about the dissolution of those entities; he had no knowledge of the
dispute between Daniels and his family until July 15, when Schleizer called him
Ato bring [Holland] up to speed on what all had been happening@ over the past few months; Holland met with Schleizer on July 27, and
Schleizer told Holland about events that had already happened and about plans
Schleizer had discussed with the family; members of the family thereafter
called Holland to discuss the events of the previous months, but Holland told
them that he could not advise any family member individually on those issues
because he had a conflict of interest; and he did not discuss dissolution of
PDG and Marlin or Daniels=s
termination from those entities with any family member. 

Holland=s affidavit shows that the flow of information was to Holland
from Schleizer and the family, not the other way around.  We hold that Holland=s affidavit was sufficient to refute as a matter of law Appellants= allegation that he disclosed their confidences to Daniels=s family or otherwise improperly used that information.  The burden then shifted to Appellants to
present the trial court with evidence of any issues that would preclude summary
judgment; namely, with evidence that, contrary to his affidavit, Holland did
disclose or improperly use Appellants= confidential information.  See
Clear Creek Basin Auth., 589 S.W.2d at 678. 
Appellants wholly failed to shoulder this burden.  Nothing in their summary judgment evidence
raises a fact issue as to whether Holland disclosed or improperly used
confidential information. 

We hold that Holland
conclusively negated an essential element of Appellant=s breach-of-fiduciary-duty claim. 
Thus, the trial court did not err by granting summary judgment on this
claim, and we overrule Appellants= second issue.

 

 








                                             Conclusion

Having overruled both of
Appellants= issues, we
affirm the judgment of the trial court.

 

 

ANNE GARDNER

JUSTICE

 

PANEL B:   LIVINGSTON, GARDNER, and WALKER, JJ.

 

DELIVERED:
June 15, 2006











[1]See Tex. R. App. P. 47.4.





[2]PDG,
Marlin, and Daniels alleged identical claims against Holland.





[3]Appellants
argue that other breaches of fiduciary duty, such as Holland=s
failure to disclose conflicts to Appellants, may be inferred from their
pleading. We disagree.  Appellants=
pleading is narrow and specific and alleges only those breaches of fiduciary
duty we have identified.